**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **WILLIAM L. HARDING,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-16-1309-R** |
| | ) |
| **CARL BEAR,** | ) |
| | ) |
| **Respondent.** | ) |

**REPORT AND RECOMMENDATION**

Petitioner William L. Harding, appearing pro se, has petitioned this Court for a writ of habeas corpus, challenging through 28 U.S.C. § 2254 the constitutionality of his criminal conviction by the State of Oklahoma. *See* Pet. (Doc. No. 1); Pet. Ex. 1 (Doc. No. 1-1). United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. Respondent has filed an Answer (Doc. No. 9), to which Petitioner has replied (Doc. No. 12). For the reasons outlined below, it is recommended that the Petition be denied.

## I.   Relevant Case History

On August 21, 2012, Petitioner leaned into a parked car holding three occupants and, using a handgun, shot the man sitting in the driver's seat multiple times, fatally injuring him. When an Oklahoma City Police Department ("OCPD") officer located Petitioner soon afterwards, Petitioner advised the officer that he was the person the police were searching for and led the officer to the handgun. Vol. I Trial Tr. 209-10; Vol. II Trial Tr. 128-30 (*State v. Harding*, No. CF-2012-5233 (Okla. Cty. Dist. Ct. Nov. 4-7, 2013))

(Doc. No. 11) (conventionally filed).  Following a jury trial in the District Court of Oklahoma County, Oklahoma, Petitioner was convicted of: (i) Count 1: first-degree murder; and (ii) Count 2: possession of a firearm after two or more previous felony convictions.  Vol. IV Trial Tr. 71-72; Verdict Tr. 3-4 (*State v. Harding*, No. CF-2012-5233 (Okla. Cty. Dist. Ct. Nov. 7, 2013)) (Doc. No. 11).  On November 15, 2013, Petitioner was sentenced to life imprisonment on Count 1 and three years' imprisonment on Count 2, to run concurrently.  Original Record ("OR") at 253-55 (Doc. No. 11).

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA").  *See Harding v. State*, No. F-2013-1103 (Okla. Crim. App.).  The OCCA affirmed Petitioner's conviction and sentence on December 3, 2014.  *See* OCCA Summ. Op. (Doc. No. 9-3).

On September 23, 2015, Petitioner filed an Application for Postconviction Relief in the trial court.  *See* Pet'r's Postconviction Appl. (Doc. No. 9-4).  On July 5, 2016, the trial court denied postconviction relief.  *See* Trial Ct. Postconviction Order (Doc. No. 9-6).  Petitioner appealed this disposition to the OCCA, and on October 18, 2016, the OCCA affirmed.  *See* OCCA Postconviction Order (Doc. No. 9-8).

Petitioner then filed the instant habeas action, raising nine grounds for relief.  *See* Pet. at 5-11; Pet. Ex. 1, at 1-4.[1]  Respondent concedes, and the record likewise reflects, that the Petition was timely filed.  *See* Pet. at 1; Answer at 2; 28 U.S.C. § 2244(d)(1).  The undersigned has liberally construed Petitioner's pro se filings and carefully reviewed "the

---

[1] References to documents electronically filed in this Court use the CM/ECF pagination.

facts and the pleadings" in order "to ascertain what occurred in prior state proceedings and the true nature of Petitioner's claims" and to ensure "substantial justice."  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

## II.   Discussion

### A.  Ground One: Ineffective Assistance of Appellate Counsel

In Ground One, Petitioner argues that his appellate counsel was ineffective for failing to raise Petitioner's chosen complaints on direct appeal—primarily, multiple allegations of ineffective assistance of Petitioner's trial counsel.  *See* Pet. at 5-6; Pet'r's Postconviction Appl. at 5-12; Pet'r's Reply at 4-5.

Petitioner first raised this argument in his Postconviction Application, and the trial court denied relief.  *See* Pet'r's Postconviction Appl. at 5-12; Trial Ct. Postconviction Order at 3.  The OCCA affirmed, stating: "With regard to his claim of ineffective appellate counsel, the District Court also correctly found that Petitioner had not established he was prejudiced by any of counsel's alleged shortcomings."  OCCA Postconviction Order at 2 (citing *Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013) (applying the ineffective-assistance standard of *Strickland v. Washington*, 466 U.S. 668 (1984))).

### 1.  Standard of Review

Where, as here, a § 2254 habeas claim has been adjudicated on the merits by the state courts, a deferential standard of review applies:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt.  If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court

decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the two-prong test established by the Supreme Court in *Strickland*, 466 U.S. 668. First, Petitioner "must show that counsel's performance was deficient." *Id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness" or, in other words, that counsel's performance was "not within the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if "the challenged action might be considered sound trial strategy." *Id.* at 689 (internal

quotation marks omitted).  And "where it is shown that a particular decision was, *in fact*, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

With respect to the second prong of the analysis, Petitioner must show that "but for counsel's unprofessional errors," "there is a reasonable probability" that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently.  Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different.  This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citations and internal quotation marks omitted).

Because the OCCA applied *Strickland* to deny Petitioner's ineffective-assistance-of-appellate counsel ("IAAC") claim on the merits, this Court reviews the OCCA's decision under § 2254(d)(1) "to determine whether or not it applied *Strickland* in an objectively reasonable manner." *Spears v. Mullin*, 343 F.3d 1215, 1248 (10th Cir. 2003); *see* OCCA Summ. Op. at 2.  When the "highly deferential" standard of *Strickland* is applied

5

in tandem with the "highly deferential" standard of § 2254(d), the resulting review is "doubly" deferential.  *Richter*, 562 U.S. at 105 (internal quotation marks omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

### 2.  Failure to Raise Petitioner's Preferred Arguments

Liberally construed, Petitioner first argues that his court-appointed appellate counsel failed to adequately consult with him regarding the issues to be raised on direct appeal and failed to raise all of the issues desired by Petitioner.  *See* Pet. at 5; Pet'r's Postconviction Appl. at 5-6.

However, as outlined below, the ineffective-assistance-of-trial-counsel ("IATC") issues that Petitioner identifies as ones that should have been raised on direct appeal are meritless.  Thus, Petitioner cannot show that his appellate counsel was constitutionally ineffective for failing to raise these issues. *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) ("If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.").  Moreover, even if any such argument had some limited force, that alone would not substantiate Petitioner's IAAC claim.  Petitioner's counsel was not required to "raise every nonfrivolous claim" in the merits brief.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *see Jones v. Barnes*, 463 U.S. 745, 754 & n.7 (1983) (rejecting the proposition that "a criminal defendant has a constitutional right to have appellate counsel raise every nonfrivolous issue that the

defendant requests"). "Winnowing out weaker arguments is not a constitutionally deficient practice and, indeed, is the hallmark of effective advocacy." *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991) (internal quotation marks omitted); *see Robbins*, 528 U.S. at 288 (noting that "it is difficult to demonstrate that counsel was incompetent" based upon "counsel's failure to raise a particular claim").

Further, Petitioner's vague allegation that his trial and appellate attorneys were "co-horts" and were working under an unidentified "conflict[] of interest" fails to adequately explain any prejudicial error on his appellate counsel's part. Pet'r's Postconviction Appl. at 5; *cf. Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). And, relatedly, Petitioner's argument that his appellate counsel's performance was rendered ineffective merely because of limited communication between Petitioner and his attorney is without foundation. Petitioner affirmatively alleges that he corresponded with his first appellate attorney in March 2014, four months before his appellate brief was filed with the OCCA. *See* Pet'r's Postconviction Appl. at 5; Pet'r's Appellate Br. (Doc. No. 9-1) at 1. Thus, Petitioner's appellate counsel did not "abandon[]" Petitioner or "erroneously fail[] to file a merits brief." *Maples v. Thomas*, 565 U.S. 266, 271, 289 (2012); *Robbins*, 528 U.S. at 288; *cf. Campbell v. Greene*, 440 F. Supp. 2d 125, 152 (N.D.N.Y. 2006) ("[A]n appellate attorney's failure to communicate with his or her client, by itself, does not constitute *per se* ineffective assistance of counsel. . . . [T]he Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged

7

trial errors that his client wishes to pursue." (citation and internal quotation marks omitted)).

For these reasons, and as further set forth below, Petitioner has not shown that his appellate counsel's performance was objectively unreasonable and cannot show a lack of any "reasonable argument that counsel satisfied *Strickland*'s deferential standard" in this respect. *Richter*, 562 U.S. at 105.

### 3.   Alleged Errors of Trial Counsel

The remainder of Petitioner's ineffective-assistance claim is premised upon his appellate attorney's failure to raise ineffective assistance of trial counsel as a basis for relief on direct appeal.  In support, Petitioner points to a litany of alleged shortcomings of his trial attorneys.  *See* Pet. at 5; Pet. Ex. 1, at 7-12.  These are addressed in turn.

### a.   Failure Regarding a Right to a Speedy Trial

Petitioner contends that his trial counsel refused to follow Petitioner's request to move "for a fast [and] speedy trial."  Pet'r's Postconviction Appl. at 7.  But it is "strongly presume[d] 'that an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct *might* have been part of a sound trial strategy,'" *United States v. Vaughan*, 643 F. App'x 726, 733 (10th Cir. 2016) (quoting *Bullock*, 297 F.3d at 1046), and Petitioner fails to offer any factual support regarding the circumstances or denial of such a request or of any actual speedy-trial violation.[2]  It follows that Petitioner "cannot show" that his trial counsel should have sought dismissal or should have opposed any

---

[2] The record reflects that the trial was continued only twice: once by request of Petitioner and once by request of the State.  OR 123, 127.

continuance on the basis of such a violation or that Petitioner "was prejudiced under *Strickland* by counsel's failure to move for dismissal on speedy-trial grounds." *Id.* at 733-34 (citing *United States v. Rushin*, 642 F.3d 1299, 1307 (10th Cir. 2011) ("[N]ot every decision on the part of defense counsel to forego filing a motion to dismiss upon an apparent [speedy trial] violation . . . is suspect under *Strickland*'s first prong.")).

### b.   Failure Regarding Contradictory Witnesses

At trial, a companion of Petitioner's named Cynthia McCullough testified regarding her eyewitness account of Petitioner shooting the victim, which transpired with Ms. McCullough inside the vehicle and the vehicle located in front of Ms. McCullough's residence.  Vol. I Trial Tr. 195-215; Vol. II Trial Tr. 14-53.  Petitioner asserts that his trial counsel erred by failing to investigate and present witnesses whose testimony "could contr[a]dict" Ms. McCullough's testimony and show that Ms. McCullough "lied on the stand."  Pet'r's Postconviction Appl. at 7, 8.

Petitioner fails to identify what aspect of Ms. McCullough's testimony could have been contradicted.  The other surviving eyewitness to the shooting, Madeleine Coakley, testified for the State at trial and her version of events was largely consistent with Ms. McCullough's.  Vol. II Trial Tr. 54-119.  "[T]he speculative witness is often a two-edged sword.  For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony."  *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008). Petitioner has not shown that if trial counsel had further investigated, there is a reasonable probability that the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.

### c.   Failure to Investigate the Crime Scene

Petitioner next argues that his trial counsel erred by failing to investigate the crime scene or the vehicle in which the victim was shot "other than driving by and taking pictures." Pet'r's Postconviction Appl. at 7. Noting that the State at one point made a plea offer on a lesser charge, Petitioner appears to argue that the existence of such a plea offer reflects something about the crime-scene evidence that was favorable to Petitioner but was not investigated by defense counsel. *See id.*

The record reflects that Petitioner's trial counsel requested that the State make the vehicle in which the shooting occurred and a weapon found therein available to Petitioner for inspection and testing. OR 92. Petitioner offers no factual or legal support for the proposition that the State's offer of a plea deal was motivated by the crime-scene evidence or that Petitioner's case at trial was negatively affected by a failure of his trial counsel to independently view the scene of the shooting. Thus, Petitioner's assertion of prejudice is purely speculative and fails to show a reasonable probability of a different result at trial absent this alleged error. *See Strickland*, 466 U.S. at 694; *cf. United States v. Sauceda*, 473 F. App'x 861, 862 (10th Cir. 2012) (rejecting IATC habeas claim where counsel had in fact raised the issue argued by the petitioner).

### d.   Failure to Prepare Petitioner to Testify

Petitioner asserts that he did not testify at trial because one of his trial attorneys failed to prepare him to testify at trial on his own behalf. *See* Pet'r's Postconviction Appl. at 8. He also asserts that his other trial attorney advised him not to testify. *See id.*

10

The Tenth Circuit has indicated that if trial counsel somehow deprives a criminal defendant "of the constitutional right to testify in his own defense," this conduct would constitute deficient performance under *Strickland*.  *See Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004).   But Petitioner does not allege that he affirmatively and "unequivocal[ly]" sought to testify and was actually prevented from doing so by his counsel.  *Id.* at 1170.  He alleges only that one attorney did not specially assist him in preparing such testimony and that his other attorney advised him not to testify.  *See* Pet'r's Postconviction Appl. at 8.  Petitioner stated in open court that: he understood that he had the absolute right to testify; he understood that his attorneys could not keep him from testifying; and his decision not to testify was made freely and voluntarily.  Vol. III Trial Tr. 101, 141; *see Underwood v. Massie*, 75 F. App'x 747, 748, 749 (10th Cir. 2003) (affirming the denial of habeas relief on IATC claim where the record reflected no objection by criminal defendant to her counsel's assertion that she would not testify).  An attorney may not "usurp[]" the defendant's decision, but an attorney's advising his or her client not to testify is not, in itself, unsound trial strategy or objectively unreasonable.  *Cannon*, 383 F.3d at 1168; *see id.* at 1171 ("Counsel . . . should make a recommendation to the defendant."); *see, e.g.*, *Hooks v. Ward*, 184 F.3d 1206, 1220 (10th Cir. 1999).  Even assuming the truth of Petitioner's assertions, Petitioner has not shown that his trial counsel acted deficiently within the meaning of *Strickland* in this regard.

### e.  Failure Regarding Toxicology Report

Petitioner contends that, prior to trial, he requested that a toxicology report be performed on the shooting victim but his trial counsel "refused or would simply say it was

11

too late." Pet'r's Postconviction Appl. 9.  Petitioner claims that such a report would have shown that the victim was under the influence of drugs and therefore his "de[cis]ions were diminished." *Id.*

A forensic pathologist who examined the victim's body testified at trial that drug testing was not needed to determine the cause and manner of death of the shooting victim and so had not been performed.  Vol. III Trial Tr. 55-56.  Petitioner's counsel cross-examined her thoroughly on this point.  *Id.* at 59-61.  Further, two eyewitnesses testified as to the victim's behavior and actions on the night in question and immediately prior to being shot.  Vol. I Trial Tr. 195-215; Vol. II Trial Tr. 14-53, 54-119.  Petitioner fails to show a "substantial" likelihood of a different result had his trial counsel requested drug screening of the victim.  *Richter*, 562 U.S. at 112.

### f.   Failure Regarding Pretrial Discovery

Petitioner argues that his trial counsel did not permit him to "study" the pretrial discovery "in its entirety."  Specifically, Petitioner alleges that he asked his trial counsel to obtain and use records of text messages from Petitioner's cell phone that would show that Petitioner had been threatened and that Ms. McCullough "was involved in some way" with an attempt to cause Petitioner harm.  Pet'r's Postconviction Appl. at 9; *see also* Pet. at 5; Pet'r's Reply at 6-10.

But defense counsel did file a discovery request for Petitioner's cell phone, *see* OR 92, and the record reflects that months prior to trial the State provided both the phone itself and a CD containing forensic analysis of the phone, Pretrial Hr'g Tr. 4 (*State v. Harding*, No. CF-2012-5233 (Okla. Cty. Dist. Ct. Apr. 29, 2013)) (Doc. No. 11).  Petitioner's trial

counsel cross-examined Ms. McCullough at length, including as regards her relationship with Petitioner. Vol. II Trial Tr. 10-38, 49-53. Because trial counsel requested the evidence and questioned the witness that Petitioner cites, Petitioner must show deficient performance and prejudice in the manner in which trial counsel did so. These type of attorney actions are replete with strategic decisions and may be shown to be "constitutionally ineffective" only if they were executed in a way that was "'completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy.'" *Parker v. Jones*, 423 F. App'x 824, 828 (10th Cir. 2011) (alteration omitted) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)). *Strickland* requires "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110. Whether or not counsel utilized the cell-phone evidence to the extent Petitioner would have liked, Petitioner's unsupported speculations do not show that his counsel acted deficiently in this respect.

g.  Failure Regarding the State's Documents

Prior to trial, defense counsel filed a motion seeking the records of telephone calls that Petitioner had made while in county jail awaiting trial. OR 88. At a pretrial hearing, the prosecution informed the trial court that the State had turned over a CD containing Petitioner's jail calls through April 20, 2013. Pretrial Hr'g Tr. 4. Petitioner argues that after the trial had commenced, the prosecution provided defense counsel with documents, which Petitioner "believe[s]" "had to do with the county jail phone records," but that his attorney "refused" to allow Petitioner to view the documents. Pet'r's Postconviction Appl. at 10.

Petitioner's assertions are entirely speculative as to the contents of these documents and why any documents related to the phone-call records would be material to his criminal proceedings. Thus, Petitioner "has failed to show that even if counsel were deficient in the ways he alleges, such deficiency would have prejudiced his defense." *Boyle*, 544 F.3d at 1138.

h.  Failure to Request DNA Tests

At trial, Ms. Coakley testified that at the time of the shooting she was sitting in the front passenger seat of the parked vehicle and that the victim was sitting in the driver's seat. Vol. II Trial Tr. 65. She further testified that her Taser had been in a pocket in the driver's side door and that the victim had possessed a revolver. *Id.* at 77-78, 81-82. Both a loaded revolver and a Taser were found in the vehicle after the shooting. *Id.* at 214.

Petitioner objects that his trial counsel refused to request DNA tests on the revolver and Taser "to establish perjury" by "witnesses." In support, Petitioner states only: "Ms. Coakley stated that she did not know where the weapons were yet the Ta[s]er was found in the seat she occupied [and was] powered on. The [.38] revolver was found [on] driver side floor board in the front." Pet'r's Postconviction Appl. at 10.

Petitioner's trial counsel questioned and impeached Ms. Coakley at length regarding inconsistencies in her story with respect to these two weapons. Vol. II Trial Tr. 77-85. Petitioner fails to explain how DNA tests would have demonstrated perjury on the part of Ms. Coakley or any other witness. Petitioner's "speculative assertions" "are clearly insufficient to carry his burden of proving prejudice." *Boyle*, 544 F.3d at 1140; *cf.*

14

*Strickland*, 466 U.S. at 693 ("Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.").

i.   Failure to Present an Expert on Gunshot Wounds

The forensic pathologist testified at trial that the victim was struck by either five or six bullets, with perforating wounds to the chin, left arm, and back.  Vol. III Trial Tr. 44, 59.  Petitioner claims that his attorneys erred by refusing his request for a "ballistic spe[cialist] to review gunshot wounds" on the victim.  Pet'r's Postconviction Appl. at 10.  According to Petitioner, testimony from such a specialist "would show that the wounds in [the victim's] lower back greatly differ [from] the other wounds" in ways that are inconsistent with the effects of a large-caliber firearm such as the one that Petitioner used to shoot the victim.  *Id.* at 10-11.

Two eyewitnesses testified that Petitioner and no one else shot the victim multiple times.  Vol. I Trial Tr. 195-215; Vol. II Trial Tr. 14-53, 54-119.  Petitioner's counsel could—and did—cross-examine the medical examiner as to the victim's specific gunshot injuries and cause of death.  Vol. III Trial Tr. 54-59.  Petitioner has not shown "a reasonable probability" that, without his counsel's alleged error, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

j.   Failure to Call OCPD Officer to Testify

Petitioner argues that his counsel erred by failing to call to the stand an OCPD officer who transported Petitioner from the site of his arrest to the county jail.  Petitioner alleges that this officer could testify as to Petitioner's concern for the victim and a statement

15

made to Petitioner "that it looks like self[]defense." Petitioner also alleges that he informed his counsel of this statement. Pet'r's Postconviction Appl. at 11.

Petitioner has not shown that any prejudice within the meaning of *Strickland* resulted from his trial counsel's conduct in this regard. Although a police officer could "have provided helpful testimony on direct examination, the admissions and qualifications elicited by prosecutors on cross examination" could have been damaging. *Boyle*, 544 F.3d at 1139. "This is why the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Id.* Further, Petitioner's brother specifically testified that Petitioner was "concerned" when they spoke shortly after the shooting and that Petitioner told his brother "he heard a click and he returned fire." Vol. III Trial Tr. 113-15. And the police officer who arrested Petitioner testified that Petitioner asked how the victim was doing and told the officer, "I was just defending myself." Vol. II Trial Tr. 137. Finally, the jury was instructed regarding the requirement that they determine whether Petitioner acted in self-defense and the elements to consider. OR 196-203.

For all these reasons, Petitioner cannot show prejudice on this claim. *See Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995) (rejecting IATC habeas claim where the additional evidence was "at most cumulative, and of limited probative value"); *Foster v. Ward*, 182 F.3d 1177, 1189 (10th Cir. 1999) (finding no prejudice under *Strickland* where the testimony not presented "would have been largely cumulative" to another witness's testimony).

k.   Failure to Argue Petitioner's Preferred Defense

Petitioner claims that his trial counsel failed to accept Petitioner's request to argue at trial that Petitioner acted in self-defense. *See* Pet. at 5; Pet'r's Postconviction Appl. at 11; Pet'r's Reply at 5-6. But Petitioner's factual premise is not supported by the record: his defense counsel argued consistently throughout the trial that Petitioner acted in self-defense when shooting into the car. *See, e.g.*, Vol. I Trial Tr. 183, 190; Vol. IV Trial Tr. 39-40, 43-44, 56-57; *see also* Vol. III Trial Tr. 146 (defense counsel obtaining, over the State's objection, jury instruction on self-defense). Regardless of whether defense counsel argued the issue precisely to Petitioner's liking, Petitioner cannot show that his counsel's performance was not "reasonable considering all the circumstances" due to any failure to assert self-defense as a defense at trial. *Strickland*, 466 U.S. at 688; *see also Sauceda*, 473 F. App'x at 862.

l.   Statement by Trial Attorney

Petitioner contends that his trial attorney made a statement to the effect that what matters during the case is not what happened but what is proven and that this statement shows his counsel's "deliberate lack of concern for the overall outcome of said case." Pet'r's Postconviction Appl. at 11. Petitioner has not shown that merely making such a statement "was completely unreasonable" or that but for the making of this statement "there is a reasonable probability that the result of the proceedings would have been different." *Fox*, 200 F.3d at 1295.

m. Failure Regarding Type of Trial and Jury Selection

Petitioner argues that his trial attorneys failed to ask him about the choice of trial by judge or by jury and failed to discuss juror selection with him. *See* Pet'r's Postconviction Appl. at 12. Petitioner does not allege, much less show, that he would have done anything differently in these respects or that such discussions reasonably would have changed the outcome of his trial. Petitioner therefore fails to show any prejudice within the meaning of *Strickland* from the challenged attorney actions.

n. Failure to Call Character Witnesses

Petitioner objects that his defense counsel failed to call character witnesses on Petitioner's behalf to testify that Petitioner would not want to deliberately take a human life or cause great harm. *See id.* But Petitioner's counsel did call Petitioner's brother to testify, as well as a woman who was a friend of Ms. McCullough's and who knew Petitioner. Vol. III Trial Tr. 107-08, 129-30. Further, Petitioner's assumption that more effective character witnesses existed, were reasonably known to defense counsel, and would have testified favorably to Petitioner, is entirely speculative. Petitioner has not shown that his trial counsel performed objectively unreasonably in this regard. *See Boyle*, 544 F.3d at 1138-39.

o. Failure to Investigate Victim

Finally, Petitioner argues that his counsel refused to investigate the victim and specifically whether, although the prosecution stated that the victim had not been convicted of any crime, the victim had been on the run from a sheriff's department. *See* Pet'r's Postconviction Appl. at 12. Petitioner fails to show how any such investigation reasonably

18

would have changed the result of his proceedings and thus fails to show prejudice from his attorney's performance under *Strickland*.

### p.  Summary

For all the reasons above, Petitioner cannot show, with respect to any of his IAAC claims premised upon ineffective assistance of trial counsel, that appellate counsel's performance was both deficient and prejudicial.  *See Strickland*, 466 U.S. at 688-96, 697; *see also Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed.").  Petitioner therefore cannot show that the OCCA unreasonably applied *Strickland* and cannot obtain relief under this Court's doubly deferential review of the OCCA's adjudication of this claim.  *See* 28 U.S.C. § 2254(d)(1); *Richter*, 562 U.S. at 103 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

### B.  Grounds Two and Three: Prosecutorial Misconduct and Jury Issues

In Ground Two, Petitioner claims that the prosecution failed to timely disclose certain items of evidence to the defense, failed to turn over certain jail-phone records, and made improper statements during opening argument.  *See* Pet. at 6-8; Pet'r's Postconviction Appl. at 13-14.  In Ground Three, Petitioner claims that he did not receive an impartial jury and that one juror fell asleep during proceedings.  *See* Pet. at 8-9; Pet'r's Postconviction Appl. at 15-16.

Petitioner first raised these claims to the trial court, in his Postconviction Application. *See* Pet'r's Postconviction Appl. at 13-16. The trial court denied relief, holding that these claims "could have been raised on direct appeal" and thus consideration of the claims "has been waived." Trial Ct. Postconviction Order at 2-3. The OCCA affirmed:

> Post-conviction review provides petitioners with very limited grounds upon which to base a collateral attack on their convictions and sentences. [*Logan*, 293 P.3d at 972]; 22 O.S.2011, § 1086. Issues that were previously raised and ruled upon by this Court are procedurally barred from further review under the doctrine of *res judicata*; and issues that were not raised previously on direct appeal, but which could have been raised, are waived for further review. *Id.* Such issues may not be the basis of a post-conviction application unless the court finds that there is sufficient reason why one of the otherwise barred or waived issues was not asserted or was inadequately raised in the prior application. *Id.*
>
>     . . . The District Court correctly found that, with the exception of his claims of ineffective assistance of appellate counsel and newly discovered evidence, Petitioner's grounds for relief in this matter are either procedurally barred or waived.

OCCA Postconviction Order at 1-2.

Respondent argues that Petitioner is precluded from obtaining habeas relief on Grounds Two and Three because the OCCA found these claims to be procedurally barred. *See* Answer at 19-25; *see also* Pet'r's Reply at 10-11. A federal habeas claim may be barred by a petitioner's procedural default in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

The OCCA's imposition of a procedural bar was an "independent" state ground because it was "separate and distinct from federal law" and "the exclusive basis for the state court's holding." *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995); *see* OCCA Postconviction Order at 1-2; Okla. Stat. tit. 22, § 1086. And "[a] state court finding of procedural default is adequate if it is strictly or regularly followed." *Maes*, 46 F.3d at 986 (internal quotation marks omitted). The Tenth Circuit has recognized that Oklahoma's bar on raising claims for postconviction relief that could have been raised on direct appeal is an independent and adequate state-law ground. *See Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008); *Hale v. Gibson*, 227 F.3d 1298, 1330 (10th Cir. 2000).

As a result, federal habeas corpus review of Petitioner's Grounds Two and Three is precluded absent a showing by Petitioner of either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "a fundamental miscarriage of justice" will result if Petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

"Cause" under the cause-and-prejudice analysis "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753. Liberally construed, Petitioner points to ineffective assistance of his appellate counsel as cause for the failure to raise Grounds Two and Three on direct appeal. *See* Pet. at 7, 8. Attorney error amounting to constitutionally ineffective assistance of counsel under the Sixth Amendment may constitute cause as would be required to excuse a procedural default. *Coleman*, 501 U.S. at 753-54. However, "before [Petitioner] can use ineffective assistance of . . . appellate counsel to establish cause for his procedural default, he must first present

21

this argument as an independent claim to the state court." *Gonzales v. Hartley*, 396 F. App'x 506, 508-09 (10th Cir. 2010) (emphasis omitted) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)).  As outlined above, the IAAC claim presented by Petitioner on his postconviction effort was founded entirely upon his appellate counsel's alleged conflicts and failure to raise certain (unrelated) IATC claims on direct appeal.  There was no IAAC argument raised relevant to appellate counsel's treatment of prosecutorial misconduct or these jury issues.  *See* Pet'r's Postconviction Appl. at 5-12.  Because Petitioner has not presented either his IAAC-prosecutorial misconduct or his IAAC-jury-misconduct argument "as an independent claim to the state court," he cannot rely upon the purportedly ineffective appellate assistance to excuse his failure to raise his substantive claims on direct appeal.  *Gonzales*, 396 F. App'x at 508-09; *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that an ineffective-assistance claim "asserted as cause for the procedural default of another claim can itself be procedurally defaulted").[3]  Absent a showing of cause, there is no need for the undersigned to consider the existence of actual prejudice.  *See Steele v. Young*, 11 F.3d 1518, 1522 n.7 (10th Cir. 1993).

As Petitioner cannot show cause and prejudice to excuse the procedural default, he must show that a fundamental miscarriage of justice will result absent consideration of Grounds Two and Three.  *See Coleman*, 501 U.S. at 750; *Steele*, 11 F.3d at 1522.  The

---

[3] Nor can Petitioner show cause by pointing to a lack of assistance in his postconviction proceedings, as "there is no Sixth Amendment right to counsel in these proceedings." *Gonzales*, 396 F. App'x at 508; *see also Carpenter*, 529 U.S. at 452 ("Not just any deficiency in counsel's performance will do [to establish cause for the procedural default], however; the assistance must have been so ineffective as to violate the Federal Constitution.").

fundamental miscarriage of justice exception is "extremely narrow" and "implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (internal quotation marks omitted).  To prevail, Petitioner must identify evidence that "affirmatively demonstrate[s] his innocence."  *Id.*; *see also Steele*, 11 F.3d at 1522.  Such claims must be based on "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

None of the bases for Grounds Two and Three, or any other evidence in the record (including the "new evidence" Petitioner references in Ground Four), affirmatively demonstrates Petitioner's *factual* innocence to the offenses of conviction.  Neither the record before this Court nor Petitioner's arguments "establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  The fundamental miscarriage of justice exception is therefore inapplicable.  Petitioner's state-court procedural default of Grounds Two and Three precludes habeas review thereof, and Petitioner is not entitled to relief.

### C.  Ground Four: New or Unheard Evidence

Petitioner asserts that the text messages from his cell phone and his recorded jail-phone conversations are "New or Unheard Evidence" that show there were threats made prior to the incident that put Petitioner in fear for his life and that there are witnesses who would contradict Ms. McCullough's statements and show that Petitioner acted in self-defense.  Pet. at 10-11; Pet'r's Postconviction Appl. at 17.

23

When Petitioner sought relief on this basis in his Postconviction Application, the trial court rejected the claim:

> Petitioner also alleges that he is in possession of new, unheard evidence, specifically his own recorded jail phone calls and his cell phone records. Certainly, post-conviction relief may be based on the discovery of "material facts, not previously presented and heard, that require[] vacation of the conviction or sentence in the interest of justice." *22 O.S. § 1080(d). . . .*
>
> Petitioner's claims of new evidence must fail.   First, he has not established that this evidence could not have been discovered prior to trial or direct appeal.   Petitioner also has not demonstrated that either item of evidence is material or that there is a reasonable probability that the outcome of the trial would have been different had it been presented to the jury.   As no new evidence has been presented to the Court, Petitioner's argument is denied.

Trial Ct. Postconviction Order at 3.   The OCCA affirmed: "[T]he District Court correctly found that Petitioner's evidence was not newly discovered or that there is any reasonable probability it would have changed the result of his trial."   OCCA Postconviction Order at 2-3.

Petitioner fails to show that he is entitled to relief on Ground Four.   Petitioner presents no federal constitutional argument in connection with his "new" evidence;[4] rather, his current argument is most reasonably construed as a contention that the state courts erred in their application of title 22, section 1080 of the Oklahoma Statutes when considering that evidence and denying relief in his postconviction proceedings.   *See* Pet. at 10.   But even assuming Petitioner is correct and "the Oklahoma court mistakenly construed the statute," "the error is one of state law not cognizable in habeas corpus because 'federal

---

[4] As explained above, the record indicates that Petitioner's counsel was in possession of these items months before trial.   *See* Pretrial Hr'g Tr. 4.

24

habeas corpus relief does not lie for errors of state law.'" *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Because the error he raises "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim." *Id.*

### D.  Ground Five: Sufficiency of the Evidence

Petitioner contends that the evidence admitted at trial was insufficient for a jury to have found beyond a reasonable doubt that he committed the offense of which he was convicted in Count 1—i.e., first-degree murder in violation of title 21, section 701.7 of the Oklahoma Statutes.  *See* Pet. Ex. 1, at 1; Pet'r's Appellate Br. at 11-17 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).  Petitioner raised this argument on direct appeal, and the OCCA denied relief:

> The evidence was sufficient for any rational trier of fact to find beyond a reasonable doubt that Harding was guilty of First Degree Malice Aforethought Murder.  The jury heard the evidence and was properly instructed on the elements of first degree murder and self-defense.  The prosecution presented sufficient evidence to prove Harding fatally shot [the victim] with malice aforethought and not in self-defense.  This claim is rejected.

OCCA Summ. Op. at 2 (citation omitted).[5]

The Supreme Court's decision in *Jackson* establishes "the minimum amount of evidence that the Due Process Clause requires to prove the offense" of conviction: under

---

[5] After disposition of his direct appeal, Petitioner attempted to also raise this challenge through his unsuccessful Postconviction Application.  On postconviction appeal, the appellate court noted that the postconviction claim was either procedurally barred or waived.  *See* OCCA Postconviction Order at 2.

*Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012); *Jackson*, 443 U.S. at 319; *see also Herrera v. Collins*, 506 U.S. 390, 402 (1993) ("[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.").

As relevant here, the Court's task "is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable." *Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009); *accord Hooks v. Workman*, 689 F.3d 1148, 1167 (10th Cir. 2012). The sufficiency of the evidence inquiry is based on the substantive elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 309, 324 n.16. The elements of First-Degree Murder applicable here are: (1) the death of a human; (2) that was unlawful; (3) caused by the defendant; and (4) caused with malice aforethought. Okla. Unif. Crim. Jury Instruction No. 4-61 (2d ed. 1996 & Supps.); Okla. Stat. tit. 21, § 701.7(A); OR 189. The jury was specifically instructed:

> "Malice aforethought" means a deliberate intention to take away the life of a human being. As used in these instructions, "malice aforethought" does not mean hatred, spite or ill-will. The deliberate intent to take a human life must be formed before the act and must exist at the time a homicidal act is committed. No particular length of time is required for formation of this deliberate intent. The intent may have been formed instantly before commission of the act.
>
> The external circumstances surrounding the commission of a homicidal act may be considered in finding whether or not deliberate intent existed in the mind of the defendant to take a human life. External circumstances include

26

words, conduct, demeanor, motive, and all other circumstances connected with a homicidal act.

OR 190; *see also* Okla. Unif. Crim. Jury Instruction Nos. 4-62, 4-63.

Petitioner challenges the evidence as to both the second and fourth elements of the charged offense.  First, Petitioner disputes that there was sufficient evidence to find that the victim's death was "unlawful," because the State failed to prove beyond a reasonable doubt that Petitioner was not acting in self-defense.  Petitioner argues that his actions were justifiable and that the evidence introduced at trial did "no more than raise a suspicion of guilt."  Pet'r's Appellate Br. at 14; *see id.* at 14-16; Pet. Ex. 1, at 1.  Second, Petitioner objects that there was not sufficient evidence to support the "malice aforethought" element, as the State failed to prove that Petitioner had the deliberate intent to take the victim's life. *See* Pet'r's Appellate Br. at 17; Pet. Ex. 1, at 1.

As indicated by the OCCA's Summary Opinion, there was detailed testimony at trial as to the events of August 21, 2010, including by the two surviving occupants of the parked car, Ms. McCullough and Ms. Coakley.  This testimony included that:

- Petitioner was lingering next to the passenger side of the vehicle, arguing with Ms. McCullough, when Petitioner announced, "I could rob everybody in this car," or "I should rob everybody in this car," or "I'll rob everybody in this fucking car."  Vol. I Trial Tr. 200, 204, 207-08; Vol. II Trial Tr. 64, 67, 101.

- The victim, who was sitting in the driver's seat, turned toward Petitioner and verbally objected, holding a Taser in his hand.  Vol. I Trial Tr. 207, 209; Vol. II Trial Tr. 48; State's Ex. 69.

27

- Petitioner then straightened, cocked his handgun, leaned into the car, and shot the victim multiple times. Both Ms. McCullough and Ms. Coakley testified there was more than one series of shots fired; the forensic pathologist stated that the victim suffered five gunshot entrance wounds. Vol. I Trial Tr. 210-12; Vol. II Trial Tr. 25-26, 67-68, 71, 104-05; Vol. III Trial Tr. 34-46; State's Ex. 83.

- After the victim was initially shot, he turned around in the car, doubled over, and attempted to open the driver's-side car door. Vol. I Trial Tr. 212; Vol. II Trial Tr. 104-05. Petitioner then shot the victim several more times. Vol. I Trial Tr. 212; Vol. II Trial Tr. 104-05.

Considering the evidence and testimony discussed above, and elsewhere in the record, a rational trier of fact could find that Petitioner unlawfully caused the victim's death and that the death was caused with malice aforethought. Therefore, the OCCA's rejection of Petitioner's challenge to the sufficiency of the evidence was not an unreasonable application of the governing *Jackson* standard. *See* OCCA Summ. 2; 28 U.S.C. § 2254(d)(1); *Jackson*, 443 U.S. at 319; *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (discussing the "twice-deferential standard" a federal habeas court must apply to a *Jackson* claim that a state court has rejected on the merits). Petitioner is not entitled to habeas relief on Ground Five.

### E. Ground Six: Lesser-Included Offense Instructions

At trial, the jury was instructed on Count One as to two alternative offenses (first-degree murder; first-degree murder while in the commission of a robbery with a dangerous weapon) as well as a lesser-included offense (first-degree manslaughter by resisting

28

criminal attempt).  OR 189, 191, 211-12, 213, 219.  In Ground Six, Petitioner argues that the trial court erred by failing to give the jury instructions on other lesser-included offenses—i.e., first-degree manslaughter by heat of passion and second-degree manslaughter.  *See* Pet. Ex. 1, at 1-2; Pet'r's Postconviction Appl. at 20.

On direct appeal, Petitioner challenged the lack of a jury instruction on first-degree manslaughter by heat of passion, and the OCCA denied relief.  *See* Pet'r's Appellate Br. at 18-22; OCCA Summ. Op. at 2-3.  On postconviction, Petitioner additionally objected to the trial court's failure to instruct the jury on second-degree manslaughter.  *See* Pet'r's Postconviction Appl. at 20.  The trial court found this claim waived to the extent it was not raised on direct appeal, and the OCCA affirmed.  *See* Trial Ct. Postconviction Order at 2-3; OCCA Postconviction Order at 2.

To the extent the claims in Ground Six were not raised by Petitioner on direct appeal, it would appear that such claims are procedurally barred in this habeas action.  *See supra* Part II.B.  The undersigned need not resolve this question, however, because whatever its procedural posture Petitioner's entire Ground Six is "clearly without merit" and can be denied "without regard to procedural bar."  *Cannon*, 383 F.3d at 1159 ("When questions of procedural bar are problematic, . . . and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits."); *see* 28 U.S.C. § 2254(b)(2).

Petitioner is entitled to habeas relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a).  It is well

settled that there is no constitutional entitlement to a lesser-included-offense instruction in a noncapital case.

> The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has this court. Our precedents establish a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction.

*Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (citation omitted); *accord Tiger v. Workman*, 445 F.3d 1265, 1268 (10th Cir. 2006); *see, e.g.*, *DuBois v. McCollum*, No. CIV-13-721-R, 2014 WL 3397631, at *2, *8 (W.D. Okla. July 10, 2014). Thus, the Tenth Circuit has held that "a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser included offense instruction even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense." *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) (internal quotation marks omitted).

Accordingly, Petitioner is not entitled to habeas relief on the ground that the trial court erred in failing to instruct the jury on any lesser-included offense.

### F. Grounds Seven and Eight: Postconviction Infirmities

In Ground Seven, Petitioner objects that the trial court erred in denying his request for a hearing in support of his Postconviction Application. In Ground Eight, Petitioner objects that the trial court abused its discretion in failing to review all of his postconviction claims on their merits. *See* Pet. Ex. 1, at 2-3; Trial Ct. Postconviction Order at 2, 3-4.

Here, similarly to Ground Four, the errors raised by Petitioner "focus[] only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration." *Sellers*, 135 F.3d at 1339. Thus, Petitioner "states no cognizable federal

habeas claim" in Ground Seven or Ground Eight.  *Id.*; *see also Jackson v. Ray*, 292 F. App'x 737, 740 (10th Cir. 2008) ("Habeas relief under § 2254 is granted only for errors in the state judgment forming the basis for incarceration.  If that judgment was proper, there is no ground for habeas relief based on flaws in state postconviction proceedings.").

### G.  Ground Nine: Violation of U.S. Constitution

In his final argument, Petitioner argues that he has been denied "due process, effective counsel, & equal protection of the law."  Pet. Ex. 1, at 3-4 (citing U.S. Const. amends. VI, XIV); *see also* Pet'r's Reply at 1-2, 13-14.

Petitioner's ineffective-assistance claims are considered in detail above, *see supra* Part II.A.  As to the remainder of Ground Nine, Petitioner fails to adequately specify what aspect of his conviction or sentence constitutes an independent equal protection or due process violation.  *See Parker v. Dowling*, 625 F. App'x 343, 343 n.1 (10th Cir. 2015). Relief on Ground Nine should be denied.

### RECOMMENDATION

Accordingly, it is recommended that the Petition Under § 2254 for Writ of Habeas Corpus (Doc. No. 1) be DENIED.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by July 20, 2018 in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate

31

review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 29th day of June, 2018.

_____

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE